[Civ. No. 27608. First Dist., Div. Three. July 12, 1971.]

JAMES E. BURKHOUSE et al., Plaintiffs and Appellants, v.
CARLTON R. PHILLIPS et al., Defendants and Respondents.

662

## COUNSEL

Hugh L. Preston for Plaintiffs and Appellants.

Crump, Bruchler & Crump, Fredric S. Crump, Bell & Cox and Charles R. Bell for Defendants and Respondents.

## OPINION

**BROWN (H. C.), J.**—This was an action for rescission of a contract for the purchase of real property and for damages based on the alleged fraudulent misrepresentation of sellers, Carlton R. Phillips and Nellie Phillips (Phillips), and their real estate broker, W. Scott Mansfield (Mansfield).

The question presented is whether the trial court erred in instructing the jury that the plaintiffs could not recover if there was no difference between the purchase price of the property at the time it was sold and the actual value of the property. We conclude that under the facts of this case this instruction should not have been given.

The facts: In July 1963, plaintiffs saw the following ad in the San Francisco Chronicle: "45 Acres Gentleman's Farm. 35 Ac. full bearing English Walnuts. 7 Ac. young trees, year around live stream could feed man-made lake. 1963 crop with purchase, should be approx. $8,000.00 to $10,000.00 NET (present owner does no manual labor). Comfortable 6 room home, 4 car garage, large packing shed. $25,000.00 will handle. Owner will assist in financing. W. Scott Mansfield, Realtor 1322 3rd Street, Napa BA 4-5200"

Appellants were interested in property to which they could eventually retire, and they contacted the real estate broker Mansfield immediately. They viewed the property the same day. Mansfield, the broker, stressed the fact that the present crop should net between $8,000 and $10,000, figured that the property would pay for itself and said that the standard production was 20 tons. Phillips, the owner, remarked that the present crop looked better than usual.

The same day that they had first read the ad, appellants agreed to purchase the property for $80,000 payable $25,000 down and the balance payable on a deed of trust held by Phillips. The appellants made no independent investigation of the property nor did they ask to see production records, explaining at trial that it did not occur to them to question the reliability of a county official. Phillips was county auditor of Lake County.

The 1963 crop yielded 13¾ tons of walnuts and grossed $6,162.69. In 1964, the crop yielded 17 tons, grossed $7,536 and netted $2,907.01. In 1965, the yield was 11 tons and the gross was $4,407.80. By 1965, the appellants were having difficulty making payments on the property and in 1966, they sought to refinance the property. The bank requested income profit and loss statements for the property for previous years, and the appellants requested and were given Phillips' income tax schedules. These revealed a tax loss on the property in 1959, 1961 and 1962. A profit of $594.62 was reported in 1960 and a profit of $1,049.13 in 1958. Gross

income for these years was: 1958—$8,900.76; 1959—$3,983.20; 1960—$8,342.25; 1961—$4,501.50; 1962—$5,517.24.

Phillips denied that he ever represented either to his broker or appellants that the walnut crop would produce $8,000 to $10,000 per year net. He testified that appellants had abused the property so that it decreased in value $20,000. He also produced an appraiser as a witness who testified that the property's market value in 1963 was $80,865, which was $865 more than appellants had paid for it.

Phillips foreclosed on the property and it was purchased at a foreclosure sale by a third person for $1.00 more than the demand, which was approximately $47,700. Appellants brought suit against both Phillips and Mansfield alleging that misrepresentations had been made concerning the net income of the property. The action was originally for rescission. It was filed prior to the foreclosure proceeding, and after foreclosure, the rescission cause of action was eliminated and the case tried on the claim for damages.

At trial, the court instructed the jury on the subject of damages, and stated: "Under the rules which have been given to you as to whether or not a fraud or deceit has been committed, you have been instructed that one of the essential elements, which plaintiffs must prove by a preponderance of the evidence, is that the plaintiffs [*sic*] have suffered damage as a result of the fraud or deceit. If no damage is suffered by the plaintiffs in this case, you are instructed that plaintiffs cannot recover from the defendants. *You are further instructed that if there is no difference between the purchase price of the property which plaintiffs purchased and the market value of the property purchased by plaintiffs, no damage has been suffered by the plaintiffs and they cannot recover in this action.*" (Italics added.) The court refused to give plaintiffs' instruction No. 24 on damages which reads as follows: "If you find from the evidence that Plaintiffs are entitled to damages, the measure of damages you must use is that plaintiffs should be awarded their actual out-of-pocket loss. In this case the out-of-pocket loss suffered, if any, by plaintiffs would be the amount of money paid in by plaintiffs upon the property foreclosed upon."

The court's instruction is consistent with Civil Code section 3343, which states: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.

"Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

The measure of damages set forth in Civil Code section 3343 is known as the "out-of-pocket-loss" rule in contrast to the "benefit-of-the-bargain" rule which was the rule followed in California before the passage of section 3343 of the Civil Code. (See generally *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 762 [192 P.2d 935]; *Feckenscher* v. *Gamble,* 12 Cal.2d 482, 499 [85 P.2d 885]; 2 Witkin, Summary of Cal. Law (1960) §§ 425, 426, pp. 1622-1625.) ■ Although the measure of damages of section 3343 of the Civil Code is exclusive in the sense that the defrauded party may no longer receive anticipated profits as damages, an exception has been made in that damages need not invariably be the difference in value between market price and purchase price at the time of the purchase. ". . . The section must be applied realistically so as to give the defrauded person his actual out-of-pocket loss, and, where necessary to reach that result, the court must consider subsequent circumstances. . . ." (*Garrett* v. *Perry,* 53 Cal.2d 178, 184 [346 P.2d 758].) Foreclosure of the property as a circumstance which may be considered is illustrated in the *Garrett* case and also in the case upon which it relies, *Feckenscher* v. *Gamble, supra,* 12 Cal.2d 482.

Under section 3343 when there is no difference between the sale price of the land and its market value, it is possible that a purchaser may establish all the elements of fraud and yet recover nothing. "The plaintiff, e.g., may, after considerable effort, conclude an apparently profitable real estate investment. However, if it turns out that he has simply exchanged his money for property equivalent in value (as determined by the jury or found by the trial court), he cannot get damages; his only remedy is to rescind and get back his money." (2 Witkin, Summary of Cal. Law (1960) Torts, § 426, p. 1624; see also *Oliver* v. *Benton,* 92 Cal.App.2d 853 [208 P.2d 375].)

Here the appellants could not rescind the transaction and return the real property for their down payment because the property had been sold to third parties in the foreclosure sale.

■ Under the out-of-pocket loss rule, he may show that the foreclosure was caused by the misrepresentation, and he may recover his down payment as an out-of-pocket loss.

In *Hahn* v. *Food Service Equipment Co.,* 220 Cal.App.2d 412 [33 Cal. Rptr. 851], the plaintiff claimed fraudulent representations had led to purchase of restaurant fixtures. The jury had given damages despite evidence that the fixtures were worth more than their sale price at the time of purchase. There had been a foreclosure, however, and the plaintiff was allowed to receive as damages the amount he had paid in on the fixtures, together with operating losses.

Respondent Phillips does not challenge these cases but argues that there was no evidence that the alleged misrepresentations proximately caused any damage and characterizes the foreclosure as unexplained. There was evidence, however, from which the jury could have concluded that appellants were unable to make the payments because the property did not produce the income represented to them by Phillips and Mansfield. They could not, however, have returned a judgment for appellants under the instruction given by the trial court.

Sale under foreclosure is a circumstance subsequent to the original sale which may be considered under *Garrett*. In view of their total loss of the property, appellants received nothing, and had paid the down payment and some installments. They should be allowed to recover in this amount if liability is found. We, of course, cannot determine whether the jury found absence of misrepresentation or absence of damage. Since the latter is equally likely, the entire case should be remanded for retrial under proper instructions on the issue of damages.

Respondent Mansfield argues that the complaint is not good against him because it requested rescission of a contract to which he was not a party. The action became an action for damages after the sale on foreclosure. Respondent Mansfield's attempt to distinguish the cases of *Garrett, Feckenscher* and *Hahn,* largely on the basis that realtors were not defendants in these suits, is not sound. ■ The real estate salesman may, under the proper fact situation, be liable for damages resulting from false representations in the sale of real property. (E.g., *Stumpf* v. *Lawrence,* 4 Cal.App.2d 373 [40 P.2d 920]; *Newcomb* v. *Title Guar. & Trust Co.,* 131 Cal.App. 329 [21 P.2d 456, 22 P.2d 552].) The reason for making an exception to the normal application of Civil Code section 3343 is the need to take into consideration events subsequent to the sale in order to limit damages to actual out-of-pocket losses of the defrauded parties. These losses do not vary because of the relationship of the parties.

The judgment is reversed.

Draper, P. J., and Caldecott, J., concurred.