Filed 10/31/14  Sean & Shenassa v. Chicago Title Co. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SEAN & SHENASSA 26, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CHICAGO TITLE COMPANY, <br><br> Defendant and Respondent. | D063003 <br><br><br> (Super. Ct. No. 37-2011-00094742-CU-CO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County,

Timothy B. Taylor, Judge.  Affirmed.

Wilson Elser Moskowitz Edelman & Dicker and Robert Cooper for Plaintiff and

Appellant.

Garrett & Tully, Ryan C. Squire, Edward W. Racek; Andersen Hilbert & Parker

and Jason L. Satterly for Defendant and Respondent.

Sean & Shenassa 26, LLC (S&S) appeals a judgment in favor of Chicago Title

Company (Chicago Title) on S&S's claims for breach of fiduciary duty and negligent

performance of contract.  S&S argues (1) the trial court erred by failing to properly

instruct the jury on the principle of causation on its claim for negligent performance of contract, and (2) the trial court did not instruct and the special verdict form did not require the jury to find S&S gave "informed" consent to Chicago Title performing its fiduciary duty the way it did. We reject these arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2008, S&S entered into a contract to purchase property in San Diego, California. Chicago Title served as the title company and escrow holder for the transaction. S&S put $1.2 million down to purchase the property and gave the seller a purchase money note and deed of trust for the remaining amount of the approximately $5 million purchase price.

The purchase agreement and opening escrow instructions provided that S&S's obligation to purchase the property was contingent upon its ability to obtain an "[American Land Title Association (ALTA)] owner's policy of title insurance" and escrow would be deemed closed when, among other things, a title insurance company irrevocably and unconditionally committed to issue that policy. Doris Goodrich, Chicago Title's escrow officer for the transaction, contacted Shahram Elyaszadeh, S&S's managing member, and informed him that a survey was required to issue an ALTA policy. Elyaszadeh declined to obtain a survey.

S&S intended to resell or "flip" the property. According to Goodrich, Elyaszadeh wanted an "interim binder," which is often requested when the buyer intends to resell the property at some near point in the future. The "interim binder" is not a title insurance

2

policy; rather, it is a commitment to issue a policy to the insured or insured's vestee at some point in the future.

Chicago Title issued multiple preliminary reports stating S&S would receive a California Land Title Association (CLTA) standard coverage policy, not an ALTA policy. Both CLTA and ALTA policies provide coverage against title defects that may arise from forgeries in the chain of title. The estimated closing statement showed a charge of $624 for an interim binder. Similarly, the final closing statement included a charge for an interim binder. If S&S flipped the property, the interim binder may have resulted in cost savings to S&S.

Escrow closed in July 2008. Thereafter, Chicago Title provided S&S with an interim binder for a CLTA policy. The binder obligated the insurer to issue, without additional cost, a CLTA policy to S&S or someone who bought the property from S&S, if requested within 730 days. According to Elyaszadeh, S&S never wanted an interim binder and never discussed the binder with Chicago Title. Further, Elyaszadeh had never heard of the concept of an interim binder until it was mailed to him in September or October 2008, after the close of escrow.

S&S's first payment under the promissory note to the seller was due in August, 2008. S&S failed to make any payments on the note and thus, the seller foreclosed on the property. In April 2009, S&S lost the property due to foreclosure.

In 2011, S&S sued Chicago Title for breach of fiduciary duty and negligent performance of contractual obligations, namely the escrow instructions. Specifically, S&S alleged, among other things, that Chicago Title improperly allowed the escrow to

3

close and released its $1.2 million down payment without obtaining the ALTA title policy required by the escrow instructions.

Following a jury trial, the jury returned special verdicts in favor of Chicago Title. The trial court entered judgment in favor of Chicago Title and this appeal followed.

DISCUSSION

I. *General Principles and Standard of Review*

In their briefs, both parties discuss at length matters that are not relevant to this appeal, including alleged title issues concerning the property based on forged documents and S&S's efforts to resell the property. However, this is not an action upon a title insurance policy; rather, S&S sought to recover damages for Chicago Title's alleged failure to carry out the escrow instructions. In essence, S&S claimed that if Chicago Title would have advised S&S it would not issue an ALTA policy, the escrow would not have closed and S&S would not have lost its $1.2 million down payment. Thus, S&S claims its ability to secure an ALTA policy functioned as a "transactional circuit breaker." On appeal, S&S's arguments are limited to instructional error and we focus our discussion on those points.

"'[E]rror in instructing the jury shall be grounds for reversal only when the reviewing court, "after an examination of the entire cause, including the evidence," concludes that the error "has resulted in a miscarriage of justice." The test of reversible error has been stated in terms of the likelihood that the improper instruction misled the jury. [Citation.]' [Citations.] Thus, if a review of the entire record demonstrates that the improper instruction was so likely to have misled the jury as to become a factor in the

4

verdict, it is prejudicial and a ground for reversal. [Citation.] 'To put it another way, "[w]here it seems probable that the jury's verdict may have been based on the erroneous instruction prejudice appears and this court 'should not speculate upon the basis of the verdict.'"'" (*Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 335 (*Mock*).) "'The determination whether, in a specific instance, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all of the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn.'" (*Ibid.*, italics omitted.)

## II. *Causation Instruction*

A. Background

At trial, S&S argued it would have canceled the transaction if it could not secure an ALTA policy. However, Chicago Title improperly closed escrow without obtaining an ALTA policy and released S&S's $1.2 million down payment to the seller. Chicago Title, on the other hand, argued S&S lost its money because it failed to make its mortgage payments and S&S's losses had nothing to do with the type of title insurance policy it received.

On S&S's negligent performance of contract claim, the trial court instructed the jury that "[t]o recover damages from Chicago Title for negligent performance of an escrow contract, S&S must prove all of the following: First, that S&S and Chicago Title entered into a contract. Second, that S&S did all or substantially all of the significant things that the contract required it to do. Third, that Chicago Title negligently failed to

5

do something that the contract required it to do. Four, that S&S was *harmed* by that failure." (Italics added.)

In a special verdict on the negligent performance of contractual obligations claim, the jury found the following:

> "1. Did S&S and Chicago Title enter into a contract requiring Chicago Title to obtain an ALTA Owner's policy of title insurance for S&S? [¶] Answer 'yes' or 'no.'

> "Answer: Yes

> "[¶] . . . [¶]

> "2. Did S&S modify the contract by providing Chicago Title with oral escrow instructions whereby Chicago Title was required to get a Binder for a CLTA Standard Coverage policy of title insurance and not required to get an ALTA Owner's policy? [¶] Answer 'yes' or 'no.'

> "Answer: No

> "[¶] . . . [¶]

> "3. Did S&S waive any requirement by Chicago Title to get an ALTA Owner's policy of title insurance when S&S executed the Second Amendment to Purchase and Sale Agreement? [¶] Answer 'yes' or 'no.'

> "Answer: No

> "[¶] . . . [¶]

> "4. Did S&S consent to Chicago Title issuing a Binder for a CLTA Standard Coverage policy of title insurance by reviewing and acknowledging the preliminary reports issued by Chicago Title and by reviewing and executing the estimated closing statements? [¶] Answer 'yes' or 'no.'

> "Answer: No

6

"[¶] . . . [¶]

"5. Did [Chicago Title] negligently fail to follow the escrow instructions?  [¶] Answer 'yes' or 'no.'

"Answer: Yes

"[¶] . . . [¶]

"6. Was S&S harmed by [Chicago Title's] failure to follow the escrow instructions?  [¶] Answer 'yes' or 'no.'

"Answer: No"

B.  Analysis

S&S argues the trial court erred by failing to instruct on the principle of concurrent causation.  Specifically, S&S contends it was only required to show "[Chicago Title's] conduct was a substantial factor in contributing to the harm, . . . regardless of whether there were other contributing causes or whether those contributing causes were sufficient, on their own to cause the damage."  S&S asserts that in the absence of a concurrent causation instruction, the jury was not informed that Chicago Title could be liable for S&S's damages even if S&S's failure to make mortgage payments was also a cause of harm.  Further, S&S takes issue with the instruction providing the elements S&S must establish to prove negligent performance of the escrow contract because that instruction combined the elements of causation and damages by stating S&S must prove it was "harmed" by Chicago Title's conduct.

Chicago Title contends S&S waived its claim of instructional error by failing to request a "concurrent causation" instruction or a more specific causation instruction. Chicago Title's contention has merit.

7

We find no indication in the record and S&S does not point to any request for a modification or addition to the instructions concerning causation. The record also does not reveal whether S&S objected to the court's instruction on the elements of negligent performance of the escrow instructions. S&S thus waived its right to claim instructional error by acquiescing in the court's instruction. In *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1686 (*Mesecher*), we explained principles of waiver "apply with particular force in the area of jury instructions." "A civil litigant must propose complete instructions in accordance with his or her theory of the litigation and a trial court is not 'obligated to seek out theories [a party] might have advanced, or to articulate for him that which he has left unspoken.' [Citations.]" (*Ibid.*)

Anticipating Chicago Title's waiver argument, S&S contends the trial court had a sua sponte duty to instruct the jury on the principle of concurrent causation. It relies on case law standing for the proposition that the trial court has a duty to instruct on controlling legal principles in the case. (See *Pepper v. Underwood* (1975) 48 Cal.App.3d 698, 709-710; *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 951 (*Agarwal*).) This rule applies where there is a "complete failure to instruct on material issues and controlling legal principles . . . ." (*Agarwal*, at p. 951.) Otherwise, there is ordinarily no duty to instruct in the absence of a specific request by a party. (*Ibid.*)

S&S's reliance on the above-stated rule is unavailing because this is not a case where the trial court entirely failed to instruct on material principles. The trial court instructed the jury that S&S must prove it was "harmed by" Chicago Title's negligent failure to do something required by the contract. This is the same terminology used in

8

standard jury instructions approved by the Judicial Council of California, such as the instruction setting forth the elements of breach of contract (CACI No. 300) and the standard verdict form for breach of contract (CACI No. VF-300). In fact, the court's instruction on the essential factual elements of negligent performance of contractual obligations appears to be modeled off of CACI No. 303 on breach of contract. In our view, the court's instruction was at most deficient by reason of generality. Under these circumstances, S&S was required to object and propose a more specific or more complete instruction. (See *Agarwal*, *supra*, 25 Cal.3d at pp. 948-949.) By not requesting instructions more clearly explaining principles of causation, S&S waived its claim of error. (*Ibid.*)

### III. *Consent Instruction*

A. Background

At trial, Chicago Title argued that S&S consented to Chicago Title obtaining a CLTA interim binder rather than an ALTA policy by not objecting to the preliminary reports and closing statements. S&S claimed, however, that it never wanted an interim binder, never discussed the binder with Chicago Title, and had never heard of the concept of an interim binder until after the close of escrow.

The trial court instructed the jury that on S&S's claim for breach of fiduciary duty, the jury must resolve "Chicago Title['s] alleg[ation] that S&S accepted or consented to Chicago Title's alleged conduct, [and] S&S waived the provisions in the Purchase and Sale Agreement conditioning the close of escrow on S&S's ability to obtain an ALTA[] owner's policy of title insurance." In a special verdict, the jury found S&S did not waive

9

the performance of Chicago Title's fiduciary duty, but S&S *did* "consent to [Chicago Title] in performing its fiduciary duty as it did."  Although the special verdict form did not require the jury answer any other questions on the form, the jury proceeded to answer the next question, which asked, "Did [Chicago Title] breach its fiduciary duty owed to S&S."  By a vote of eleven to one, the jury responded, "No."

B.  Analysis

S&S contends the trial court erred by failing to instruct that on Chicago Title's consent defense, the jury must find S&S gave "informed" consent allowing Chicago Title to perform its fiduciary duty the way it did.  S&S also argues the special verdict form was incomplete because it did not require a finding of "informed" consent and the jury's consent finding on the fiduciary duty claim conflicted with its finding on the contract claim.

1.  Jury Instruction on Consent

"[F]ailure to object to civil jury instructions will not be deemed a waiver where the instruction is prejudicially erroneous as given, that is which is an incorrect statement of the law.  On the other hand, a jury instruction which is incomplete or too general must be accompanied by an objection or qualifying instruction to avoid the doctrine of waiver." (*Bishop v. Hyundai Motor America* (1996) 44 Cal.App.4th 750, 760.)

Here, the trial court informed the jury it must resolve Chicago Title's allegation that S&S consented to Chicago Title's conduct.  Based on our review of the record, S&S did not object to this instruction or request an amplifying instruction informing the jury that Chicago Title must have obtained S&S's informed consent.  Thus, S&S forfeited its

10

argument that the trial court failed to instruct on the principle of informed consent as it was obligated to request a qualifying instruction if it wanted one.

Even if S&S did not forfeit its argument, we conclude the alleged error was not likely to have misled the jury and did not result in a miscarriage of justice. In determining whether an alleged instructional error resulted in prejudice, we look to all of the circumstances of the case, including the evidence, the other instructions given, counsel's argument, and any indications by the jury that it was misled. (*Mock*, *supra*, 4 Cal.App.4th at p. 335; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.)

There is no indication that the jury was misled regarding the nature or timing of the consent required to prove Chicago Title's defense. The jurors did not pose any questions in this regard. Further, the other jury instructions informed jurors regarding an escrow holder's heightened duties pertaining to the escrow instructions. For example, the instructions provided that escrow holders must "comply strictly" with the escrow instructions, substantial performance of the escrow instructions was not enough, and the escrow holder had a duty to take corrective steps to clear up conflict or error in the escrow instructions.

The jury's findings on S&S's negligent performance of contractual obligations claim also reveals the jury did not find consent based on S&S's failure to object to the preliminary reports and closing statements. On the contract claim, the jury expressly found S&S did not "consent to Chicago Title issuing a Binder for a CLTA Standard Coverage policy of title insurance by reviewing and acknowledging the preliminary reports issued by Chicago Title and by reviewing and executing the estimated closing

11

statements[.]"  Thus, any suggestion that the jury based its consent finding on the fiduciary duty claim on S&S's acquiescence to the title reports and closing statements lacks merit.  Lastly, we note that although the jury was not required to answer whether Chicago Title breached its fiduciary duty to S&S, the jury concluded it did not.

Based on the record before us, we conclude the alleged instructional error did not prejudice S&S.

2.  Special Verdict

S&S contends the special verdict form was incomplete because it did not require a finding of "informed" consent.  S&S also argues the jury's finding that S&S consented to the way Chicago Title performed its fiduciary duty conflicted with the jury's finding on the contract claim.

"Unlike a general verdict (which merely *implies* findings on all issues in favor of the plaintiff or defendant), a special verdict presents to the jury each ultimate fact in the case.  The jury must resolve all of the ultimate facts presented to it in the special verdict, so that 'nothing shall remain to the court but to draw from them conclusions of law.' [Citation.]  [¶]  The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls of special verdicts.  '[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings . . . .'"  (*Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 854-855.)  In the case of a special verdict form, reversal is not merited for an internally inconsistent verdict if the inconsistency was invited by the appellant, i.e., if the appellant drafted or stipulated to the special verdict form.  (See

*Mesecher*, *supra*, 9 Cal.App.4th at pp. 1686-1687; *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960, fn. 8; see also *Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1653.) Further, a jury's findings will be treated as inconsistent only if they are clearly antagonistic and absolutely irreconcilable with each other under any rational view of the evidence. (*Lowen v. Finnila* (1940) 15 Cal.2d 502, 504.)

Here, the parties stipulated to special verdict forms. Although S&S stated it continued to object to "issues [it] raised during the jury instructions," we see no indication in the record that S&S specifically requested an instruction on "informed consent" or that it requested to modify the special verdict form to include that language. S&S also does not point us to its specific objection on this issue. Instead, S&S only points to a general objection that Chicago Title's waiver and consent affirmative defenses do not apply to breach of fiduciary duty. This was not sufficient to alert the trial court that S&S sought to modify the verdict form and instructions to require the jury to make a finding of "informed consent." If S&S wanted such an instruction or finding, it was incumbent on S&S to request it. Accordingly, S&S is barred by the invited error doctrine from complaining about inconsistencies in the verdict on appeal. S&S also forfeited its claim regarding the completeness of the special verdict form by failing to raise the issue below.

Furthermore, S&S's claim fails on the merits as the jury's findings are not clearly antagonistic and absolutely irreconcilable with each other. (*Lowen v. Finnila*, *supra*, 15 Cal.2d at p. 504.) The jury determined that S&S *did not* consent to Chicago Title issuing

13

a CLTA binder by failing to object to the preliminary reports and closing statements. The jury, however, also found that S&S *did* consent to Chicago Title "performing its fiduciary duty as it did." These are two separate findings. The first provided discrete issues for the jury to resolve while the second was a general finding on consent in the fiduciary duty context. At trial, S&S argued Chicago Title breached its duties in multiple ways that did not relate to Chicago Title's contractual obligation to obtain an ALTA policy. For example, S&S argued, among other things, that Chicago Title failed to comply with its duty to clarify ambiguities in the escrow instructions and to remain neutral in the transaction. Because there were at least two separate courses of conduct on which the jury's findings could have been based, the jury's determinations are not clearly irreconcilable. The verdict is thus not inconsistent.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

14