[Civ. No. 40396. First Dist., Div. Four. June 23, 1978.]

CALVIN O. WALTERS, JR., Plaintiff,
Cross-defendant and Appellant, v.
IRVINE A. MARLER et al., Defendants,
Cross-complainants and Appellants;
WALTER JAMES RECTOR et al., Defendants,
Cross-defendants and Appellants;
JO HELEN HOLMAN WALTERS, Cross-defendant and Respondent;
TRANSAMERICA TITLE COMPANY, Defendant,
Cross-defendant and Appellant.

2

6

**COUNSEL**

Robert L. Mezzetti and M. Jean Starcevich for Plaintiff, Cross-defendant and Appellant and for Cross-defendant and Respondent.

Albert M. Zecher, Caputo, Liccardo, Rossi & Sturges and Robert S. Sturges for Defendants, Cross-complainants and Appellants.

James E. Jackson and Peter J. Daniels for Defendants, Cross-defendants and Appellants.

Eleanor M. Kraft in association with Albert M. Zecher, Robert S. Sturges, James E. Jackson and Peter J. Daniels.

James A. Kennedy and Stephen J. Kennedy for Defendant, Cross-defendant and Appellant.

Atwood & Hurst, Stanford H. Atwood, Jr., Robert Knox, Richard H. Gray and John H. Aspelin as Amici Curiae on behalf of Defendant, Cross-defendant and Appellant.

## OPINION

**CALDECOTT, P. J.**—Calvin O. Walters, Jr., respondent, commenced this action against Irvine A. Marler and Sharon E. Marler, appellants, for specific performance of an agreement to deed Walters a house and certain real property. Walters also sought damages. Walters amended the complaint to seek restitution based on rescission, reformation, damages for fraud, negligence, breach of fiduciary duty and for breach of contract. He named as defendants, in addition to the Marlers, Walter James Rector, individually and doing business as Action Realty Co., Roberta Fickle, Lampliter Realty Inc. (hereinafter Lampliter), Kenneth Lee Proulx, individually and doing business as Lampliter, James Leseman, Transamerica Title Insurance Company (hereinafter Transamerica), Wells Fargo Bank, and American Securities.[1]

The Marlers filed a cross-complaint against Walters, Rector, Action, Lampliter, Proulx, Leseman and Transamerica for rescission on ground of mutual mistake; a second cause of action against Leseman, Fickle, Rector, Lampliter and Proulx for breach of contract by giving Transamerica an erroneous description of the property and in a third cause of action against Transamerica for breach of escrow agreement by incorporating false representations in the American Land Title Association (ALTA) policy.

Lampliter, Proulx and Leseman filed a cross-complaint against the Marlers for indemnity for all losses, costs and attorney's fees incurred by them in defending the action by Walters.

[1]Prior to trial, the action was dismissed as to Wells Fargo Bank and American Securities.

At the trial, the matter was submitted to the jury on several different theories. On the Walters' complaint: negligence against all defendants, breach of contract against all defendants except Fickle, breach of a third party beneficiary contract against Transamerica, negligent misrepresentation against all defendants and intentional misrepresentation against all defendants. On the cross-complaint of the Marlers: negligence against all cross-defendants, breach of contract against all cross-defendants and breach of third party beneficiary contract against Transamerica. On the cross-complaint of Leseman, Lampliter and Proulx against the Marlers, the case was submitted to the jury on a theory of implied indemnity. The jury was given a separate verdict form for each theory. The court also instructed the jury that as soon as it agreed on any one verdict form on the complaint, one verdict form on the Marlers' cross-complaint, and one verdict form on the Leseman, Lampliter and Proulx cross-complaint, that would be its verdict.

The jury returned three verdicts on the complaint and two on the Marlers' cross-complaint contrary to the judge's instructions that they should return only one. The court then returned the verdict forms to the jury with renewed instructions to return the verdict on only one form.

. The jury thereupon returned a single verdict on the complaint, a single verdict on the Marlers' cross-complaint, and a single verdict on the cross-complaint of Lampliter, Leseman and Proulx. On the complaint, the jury returned its verdict on the form "Verdict on Claim for Negligent Misrepresentation." This verdict was in favor of plaintiff Walters against all defendants in the sum of $105,000, plus interest, plus punitive damages of $5,000 against the Marlers and punitive damages of $75,000 against Transamerica.

On the Marlers' cross-complaint, the jury returned its verdict on the form "Verdict Breach of Contract Based On Third Party Beneficiary Rights." This verdict was in favor of the Marlers and against Transamerica in the sum of $21,000. The jury made no other findings on the cross-complaint.

On the cross-complaint of Leseman, Lampliter and Proulx, the jury returned a verdict for the Marlers.

The issue of attorney's fees had been reserved, by stipulation, for decision by the court. After the trial, the judge awarded plaintiff $43,150 in attorney's fees against all defendants; awarded the Marlers $19,745.70

in attorney's fees against Transamerica; and awarded Lampliter, Leseman and Proulx $15,307.50 in attorney's fees against the Marlers.

After hearing the various motions for new trials, the judge ordered that the Marlers be granted a new trial unless plaintiff consented to remit the $5,000 in punitive damages awarded against them (which plaintiff did); granted the motion of Proulx for judgment notwithstanding the verdict; and otherwise denied all motions.

All parties except Proulx have appealed. Plaintiff appeals only from the judgment notwithstanding the verdict rendered in favor of Proulx. The Marlers appeal from the judgment against them in favor of plaintiff and from the judgment for attorney's fees against them in favor of Lampliter, Leseman and Proulx but not from the award of only $21,000 on their cross-complaint against Transamerica and not from the judgment rendered against them on their cross-complaint against the other cross-defendants. Transamerica appeals from the judgment against it on the complaint and on the cross-complaint and from the order denying its motions for judgment notwithstanding the verdicts. Fickle appeals from the judgment against her in favor of plaintiff. Rector appeals from the judgment against him in favor of plaintiff. Lastly, Lampliter and Leseman appeal from the judgment against them in favor of plaintiff and from the judgment against them on their cross-complaint against the Marlers.

Prior to 1944, one Tom Blanchard and his wife acquired six contiguous parcels of real property. The property contained 11.6 acres and was apparently treated as a single parcel. Blanchard constructed a house on parcel 1 with the driveway extending onto parcel 4. The sanitary system extended some 125 feet north from the house on parcel 1. Sometime prior to 1967, the county assessor erroneously assessed all improvements on the property to parcel 4. On Blanchard's death in 1969, the Wells Fargo Bank, as coexecutor of his estate, had the property surveyed. The surveyor's map erroneously showed the house to be located entirely on parcel 4.

In 1971, the Marlers purchased the entire property (11.6 acres) for $95,000, through Fickle, a sales person employed by Rector doing business as Action Realty Co. To consummate the sale, an escrow was opened with Transamerica and a preliminary title report issued on parcels 1 through 6. The report made no mention of any improvements on the property. To finance the sale, the Marlers obtained a loan of

$60,000 from Columbus Savings and Loan Association, to be secured by a deed of trust on parcels 1 through 6. Both the Marlers and Columbus obtained title insurance policies through Transamerica. Neither policy made any mention of the location of improvements. Columbus agreed to make a further advance of $15,000 to the Marlers for an addition to be built on the house. Transamerica issued an amended preliminary title report covering parcels 1 through 6; no mention was made of any improvements.

Transamerica then issued a policy to Columbus which erroneously covered only parcel 4. Ten days later, Transamerica issued a foundation indorsement which by its terms insured Columbus against loss up to $15,000 if the improvements were not located in parcel 4. Though the indorsement contained the notation "inspected" no evidence other than the indorsement was introduced at trial that the inspection had been made.

The Marlers completed the construction of the addition to the house and extended the bedroom wing on to parcel 4. At the same time, they listed the house and "one acre plus" for $125,000 with Fickle of Action Realty. The Marlers told Fickle the "one acre plus" was the area immediately around the house. It was understood the exact boundaries would be defined by a survey. The Marlers and Fickle testified they thought the house was on parcel 4.

Early in 1973, Walters was looking for a house in the area and contacted Leseman, a real estate broker associated with Lampliter Realty. Leseman told Fickle that Walters would buy the property if more land was available. Fickle stated that the Marlers might sell all of parcel 4, but there would have to be a survey. Leseman said there was no time for a survey and asked what parcel 4 included. Fickle showed Leseman a plot map and marked the location of the improvements as being within the boundaries of parcel 4.

When Leseman took Walters to view the property, Leseman misread the map and thought the top of the map was north when in fact it was east. As a result, Leseman's pointing out of the property to Walters was erroneous.

On February 7, 1973, Walters and the Marlers entered into an agreement for the purchase and sale of parcel 4 and all improvements thereon for $105,000. Transamerica, at Fickle's request, issued a prelim-

inary title report and as customary with a preliminary report, no mention was made of any improvements.

Walters obtained an $84,000 purchase money loan from Wells Fargo Bank and gave a deed of trust covering parcel 4.

Transamerica issued to Walters a California Land Title Association (CLTA) standard policy of title insurance. The policy did not insure against facts not disclosed by public records and which an accurate survey would disclose. Transamerica also issued to Wells Fargo an ALTA extended coverage policy with "100" and "116" indorsements. The 116 indorsement insured that there was a house located on parcel 4 and the 100 indorsement insured against loss due to any encroachment of the house onto adjoining lands. In accordance with normal company policy, Transamerica did not inspect the property before issuing the policy to Wells Fargo.

After moving onto the property, Walters learned that the property Leseman had shown him was not his property and the house would be close to the property line. Walters had a survey prepared. As the survey was being prepared, Walters commenced the present action against the Marlers. Walters subsequently learned that only a small portion of the house was located on parcel 4.

I

The Marlers, Fickle, Lampliter, Leseman and Transamerica first contend that the trial court erroneously refused to treat the contract as rescinded. As previously noted, the first amended complaint sought (1) rescission and restitution plus incidental, consequential and punitive damages; (2) reformation and damages; and (3) damages. At trial, the defendants attempted to restrict Walters to rescission on the ground that he had made a binding election of rescission. They argue that Walters' July 1973 notice of rescission had been accepted by the Marlers, and that a binding agreement to rescind thereby resulted. Alternatively, appellants argue that Walters should have been compelled to make an election early in trial.

However, the trial court ruled that Walters had not made a binding election of remedies and could not be compelled to make an election until the case was submitted to the jury. Substantial evidence supports the trial court's finding that Walters' notice of rescission was not accepted by

the Marlers and that the Marlers' acceptance was conditioned upon requirements that Walters would not accept. The court therefore denied defendants' motion to restrict the trial to the issue of consequential damages based upon rescission.

■ A party who attempts to rescind a contract, but does so ineffectively, does not lose his right to maintain an action for damages based upon its affirmance. (*Paularena v. Superior Court* (1965) 231 Cal.App.2d 906, 915 [42 Cal.Rptr. 366].) Such a party may, in the same action, seek rescission or, alternatively, damages based upon contract in the event rescission cannot be obtained. "There is no good reason why the plaintiff in such an action should be compelled to make an election between those remedies during the course of the trial, and such a rule would be contrary to fundamental principles of law." (*Williams v. Marshall* (1951) 37 Cal.2d 445, 457 [235 P.2d 372].) As Walters' attempt to rescind the contract was ineffectual, the trial court properly refused to restrict the trial to determination of consequential damages, or to compel an election of remedies early in trial.

Appellants further suggest that the trial court should have restricted Walters to rescission because an award of damages does not resolve the problems of the parties. However, this contention was without merit. Upon discovery of the problem with his property, Walters had an election of two inconsistent remedies: one to disaffirm the contract and rescind, and the other, to affirm the contract and sue for damages. (See *Karapetian v. Carolan* (1948) 83 Cal.App.2d 344, 346 [188 P.2d 809, 1 A.L.R.2d 1075].) ■ The choice of remedies lies with the wronged party, and not with the court. (Cf. *Williams v. Marshall, supra,* 37 Cal.2d 445 at p. 457.)

The appellants further argue that rescission should have been compelled because both Walters in his first amended complaint, and the Marlers in their cross-complaint, sought rescission of the contract. However, the trial court determined that the Marlers were not entitled to rescission. Walters was therefore entitled to elect to affirm the contract and receive damages.

II

Transamerica contends that Walters failed to prove the elements of a cause of action for negligent misrepresentation against Transamerica. This contention is well taken.

■ The elements of a cause of action for negligent misrepresentation are:

"1. The defendant must have made a representation as to a past or existing material fact.

"2. The representation must have been untrue;

"3. Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true;

"4. The representation must have been made with the intent to induce plaintiff to rely upon it;

"5. The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation.

"6. And, finally, as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage." (BAJI No. 12.45; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 573, pp. 2210-2211; § 587, p. 2225.)

■ In the instant case there is no evidence that Transamerica made any representations with respect to the location of the improvements on the property. For this reason, Walters' judgment against Transamerica on the theory of negligent misrepresentation must be reversed.

Transamerica issued the following policies of title insurance with respect to parcel 4:[2] (1) a further advance title insurance policy issued to Columbus Savings & Loan on August 17, 1971, including a foundation[3] indorsement; (2) a CLTA standard coverage policy issued to Walters and his wife on February 28, 1973, which insured him, among other things, against unmarketability of title; and (3) an ALTA title insurance policy to

---

[2]Transamerica also issued a preliminary title report regarding parcel 4 on the sale to Walters. However, this report made no reference to any improvements on the property.

[3]A foundation indorsement is normally issued to a lender, and insures that the foundation of the building on a particular property lies within the boundary lines of the property. This policy was issued to Columbus in connection with a $15,000 advance to the Marlers to construct an addition to the house.

the lender, Wells Fargo Bank, containing 100[4] and 116[5] indorsements. Walters contends that, by issuing these policies, Transamerica represented that the house would be located on parcel 4.

The CLTA policy issued by Transamerica to Walters did not provide for extended coverage. On the contrary, the policy specifically excluded "Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records." Thus, the policy contained no statements with respect to the location of any improvements on the property which could be construed as a representation regarding the location of the house.

In contrast, the ALTA lender's policies issued to Columbus Savings & Loan and to Wells Fargo Bank contained indorsements which insured them against damages which would result should the house encroach or be located on another lot. Walters argues that implicit in Transamerica's assurances against these risks is a representation that the risks would not occur. Assuming, without deciding, that a purchaser insured by a CLTA standard coverage policy is entitled to rely upon representations made to its lender, we conclude that a title insurance policy does not represent that the contingencies insured against will not occur.

■ "Title insurance is a contract to indemnify against loss through defects in the title or against liens or encumbrances that may affect the title at the time when the policy is issued." (*Hawkins* v. *Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 126 [331 P.2d 742].) The title insurer assumes the risk of losses due to defective title, and distributes the losses among all those subject to the same risk. (See Squires, *A Skeptical Look At The Doctrine of Reasonable Expectation* (1971) 6 Forum 252; cf. *Estate of Barr* (1951) 104 Cal.App.2d 506, 508 [231 P.2d 876].) However, a policy of title insurance does not represent that the contingency insured against will not occur. (*Hawkins* v. *Oakland Title Ins. & Guar. Co., supra,* 165 Cal.App.2d 116.)

*Banville* v. *Schmidt* (1974) 37 Cal.App.3d 92 [112 Cal.Rptr. 126], appears to suggest a contrary view. However, the title insurer's liability for negligence in *Banville* was based upon its performance as an abstractor of title. The liabilities of an abstractor differ from those of a title insurer. (2 Miller & Starr, Cal. Real Estate, Title Insurance and Escrows (rev. ed. 1977) § 12:79, pp. 383-386.)

---

[4]The 100 indorsement insures against loss due to violations of restrictions, including restrictions against encroachment onto adjoining lots.

[5]The 116 indorsement insures that a single-family dwelling is located on the land.

*Moe* v. *Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289 [98 Cal.Rptr. 547], is likewise distinguishable. In that case, a title insurance officer engaged in an extensive and ·continuous course of fraudulent conduct in the sale of a note, including the issuance of a title insurance policy. The court did not find the company liable on the ground that the policy itself constituted a fraudulent misrepresentation; instead the policy was but one of the instruments used by the officer to commit the fraud.

Assuming arguendo that the ALTA lender's policy is a representation that the contingencies insured against will not occur, a purchaser insured by a CLTA standard coverage may not recover for damages sustained as a result of his reliance upon them.

█ In an action for negligent misrepresentation, "[t]he representation must be made with the intent to induce action *by some particular person or persons* in reliance upon it, and the defendant is liable only to *those persons* to whom the representation was made with such intent. If others become aware of the statements and act upon them, there is no liability even though the defendant should reasonably have foreseen this possibility." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 467, p. 2729.)

Thus, even if Transamerica had represented to Columbus and Wells Fargo that the house was located entirely on parcel 4, and did not encroach onto parcel 1, Transamerica would be liable for negligent misrepresentation only to Columbus and Wells Fargo. There would be no liability to Walters if he relied upon such representations to his detriment, even if such reliance was reasonably foreseeable. To hold otherwise would give the purchaser the benefit of extended coverage without having paid the additional premium therefor. (*Contini* v. *Western Title Ins. Co.* (1974) 40 Cal.App.3d 536 at pp. 543-544 [115 Cal.Rptr. 257].)

Transamerica contends that Walters failed to establish other necessary elements of a cause of action for negligent misrepresentation. Having concluded that a policy of title insurance is not a representation that the contingencies insured against will not occur and that Walters is not entitled to recover for damages based upon his reliance, it is unnecessary to address these issues.

Transamerica further contends that it is not liable to Walters on a theory of negligence, breach of contract, or breach of contract third party beneficiary. As previously noted, the jury was instructed to return a verdict on only one of the theories of the complaint.

■ A verdict against one of two defendants which is silent as to the other defendant is not a verdict in favor of the latter but is merely a failure on the part of the jury to find on all of the issues. (*Irelan-Yuba etc. Min. Co.* v. *Pacific G. & E.* (1941) 18 Cal.2d 557, 570 [116 P.2d 611]; *Fransen* v. *Washington* (1964) 229 Cal.App.2d 570, 577 [40 Cal.Rptr. 458].) Similarly, a verdict on one theory which is silent as to other theories is merely a failure to find on the other theories. As Walters appealed only from the judgment notwithstanding the verdict rendered in favor of Proulx it is unnecessary to determine whether he was entitled to recover on his other causes of action against Transamerica.

Judgment in favor of Walters and against Transamerica must therefore be reversed.

## III

■ Relying upon *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], appellants contend that the trial court erred in refusing to instruct the jury to apportion damages among the defendants on a comparative fault basis. However, in the recent case of *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], the Supreme Court rejected a similar contention, and held that the "adoption of comparative negligence to ameliorate the inequitable consequences of the contributory negligence rule does not warrant the abolition or contraction of the established 'joint and several liability' doctrine; each tortfeasor whose negligence is a proximate cause of an indivisible injury remains individually liable for all compensable damages attributable to that injury. . . . The joint and several liability doctrine continues, after *Li*, to play an important and legitimate role in protecting the ability of a negligently injured person to obtain adequate compensation for his injuries from those tortfeasors who have negligently inflicted the harm." (*Id.*, at p. 583.) Thus, the trial court properly refused the proposed instruction regarding apportionment of damages.

## IV

The Marlers, Leseman, Lampliter, Rector and Fickle contend that the trial court erred prejudicially in refusing to find that Walters had acquired an easement by implication for the use of parcel 1 to the extent necessary for the beneficial enjoyment of the property conveyed to him. They argue that the elements of an easement by implication are present,

and that application of the doctrine is therefore proper for resolution of the dispute.

The implication of an easement is controlled by Civil Code section 1104, which provides: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." (See *Piazza* v. *Schaefer* (1967) 255 Cal.App.2d 328, 333 [63 Cal.Rptr. 246].) ■ To establish an easement by implication upon severance of unity of ownership in an entire estate, it must be shown that (1) there has been a separation of title; (2) that prior to the separation, the use which gives rise to the easement had been so long continued and obvious as to show intention of permanency; and (3) that the easement is reasonably necessary to the beneficial enjoyment of the land granted. (*Id.,* at pp. 332-333; *Warfield* v. *Basich* (1958) 161 Cal.App.2d 493, 498-499 [326 P.2d 942].) The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by the facts and circumstances of the case, and whether or not there was an implied easement depends upon the intent of the parties. (*Warfield* v. *Basich, supra,* 161 Cal.App.2d at p. 498; *Peet* v. *Schurter* (1956) 142 Cal.App.2d 237, 242 [298 P.2d 142]; *County of Los Angeles* v. *Bartlett* (1962) 203 Cal.App.2d 523, 530 [21 Cal.Rptr. 776].) In order to sustain an easement by implication, the intent of the parties to create such an easement must clearly appear. (*Orr* v. *Kirk* (1950) 100 Cal.App.2d 678, 681 [224 P.2d 71].)

■ We think it clear in this case that the holding of the trial court is amply supported by evidence that the imposition of an easement in this case would be contrary to the intent of the parties. The evidence in this case establishes that the parties intended to purchase and sell the house and surrounding property, and that parcel 4 was conveyed to Walters on the mistaken assumption of all of the parties that the house was located entirely within parcel 4. Neither of the parties intended that Walters receive parcel 4 and the house, plus an easement to use that portion of parcel 1 upon which the majority of the house was located.[6]

---

[6]*Dixon* v. *Eastown Realty Co.* (1951) 105 Cal.App.2d 260 [233 P.2d 138], did not reach an opposite conclusion. Though the *Dixon* court found an easement by implication it did not find such easement contrary to the intent of the parties.

## V

The Marlers, Leseman, Lampliter, Rector and Fickle contend that the trial court erred in requiring the jury to return a single verdict form on the complaint, and a single verdict form on the cross-complaint by the Marlers against Transamerica. Appellants submit that, by refusing to accept the multiple verdict forms originally proffered by the jury on the complaint and the cross-complaint, the judge in effect substituted its own judgment for that of the jury. This contention is without merit.

As previously noted, the court provided the jury with five separate verdict forms on the complaint, and three separate verdict forms on the cross-complaint—one for each theory of recovery.[7] Originally, the jury returned three verdict forms in favor of Walters on the complaint, and two verdict forms in favor of the Marlers on the cross-complaint. The judge refused to accept the forms on the ground that they were uncertain as to damages. He therefore returned the forms to the jury with instructions to return only a single verdict form as to the complaint, and a single verdict form as to the cross-complaint.[8]

Where an informal or insufficient verdict has been returned, the proper procedure is for the trial court to require the jury to return for further deliberation. (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 732 [39 Cal.Rptr. 64]; *Brown* v. *Regan* (1938) 10 Cal.2d 519, 523 [75 P.2d 1063].) "The trial court retains control over the proceedings with power to procure correction of informal

---

[7] Originally the jury returned the following verdicts on the complaint:

1. In favor of all the defendants in the claim for intentional misrepresentation.

2. In favor of Walters and against the Marlers and Transamerica on the claim for breach of contract, assessing compensatory damages of $55,000.

3. In favor of Walters and against Transamerica on the claim for breach of contract third party beneficiary, assessing compensatory damages of $105,000, and punitive damages of $5,000.

4. In favor of Walters and apparently against all defendants on the claim for negligent misrepresentation assessing compensatory damages in the amount of $26,300, and punitive damages in the amount of $5,000 against the Marlers and an unknown amount against Transamerica.

On the cross-complaint the jury originally returned the following verdict forms:

1. In favor of the Marlers and against Transamerica on the claim for breach of contract assessing compensatory damages in the sum of $5,000.

2. In favor of the Marlers and against Transamerica on the claim for breach of contract third party beneficiary, assessing compensatory damages in the sum of $50,000.

[8] Ultimately a single verdict was returned on the complaint assessing $105,000 as compensatory damages against all defendants, and punitive damages of $5,000 against the Marlers and $75,000 against Transamerica; and on the cross-complaint assessing compensatory damages of $21,000 against Transamerica.

or insufficient verdicts until the verdict is recorded and the jury is finally discharged." (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists, supra,* 227 Cal.App.2d at p. 732.)

It goes without saying that where damages are uncertain, the verdict is insufficient. The trial court's decision to send the jury back for further deliberations was therefore proper.

Appellant's reliance upon *Telles* v. *Title Ins. & Trust Co.* (1969) 3 Cal.App.3d 179 [83 Cal.Rptr. 444], is misplaced. In *Telles,* the court held that it is the function of the trial judge to interpret the verdict and if the interpretation is erroneous the appellate court will correct it. (*Id.,* at p. 185.)

In the present case, there was no attempt by the judge to interpret an ambiguous verdict. Instead he returned the verdict to the jury for further deliberations. The jury subsequently returned a single verdict on the complaint, and a single verdict on the cross-complaint, and judgment was entered accordingly. The first verdict was not received or entered as the verdict of the jury and the jury verdict was the one that was finally recorded. (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists, supra,* 227 Cal.App.2d at p. 733.)

## VI

█ Relying upon the antideficiency judgment statute[9] (Code Civ. Proc., § 580b), appellants contend that the trial court erred in refusing to admit evidence that Walters was under no obligation to repay Wells Fargo on the note and deed of trust. They also assign error to the court's refusal to give an instruction to that effect. They argue that, as a result, Walters was unjustly enriched in that he received the judgment for the full amount of the purchase price, including the $81,750 balance on the note and deed of trust to Wells Fargo.

Section 580b of the Code of Civil Procedure prohibits a foreclosing mortgagee from proceeding personally against a mortgagor to recover a

---

[9]Section 580b of the Code of Civil Procedure provides in relevant part: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser."

deficiency after the security is exhausted, and places the full risk of inadequate security on the purchase money lender. (*American Sav. & Loan Assn.* v. *Leeds* (1968) 68 Cal.2d 611, 615 [68 Cal.Rptr. 453, 440 P.2d 933]; *In the Matter of Forester* (9th Cir. 1976) 529 F.2d 310, 316.) A reduction in the amount of indebtedness which Walters assumed for the purchase of the property, would not entitle appellants to the benefit of that reduction in determining damages. To hold otherwise would permit *appellants* to be unjustly enriched by their negligent misrepresentations. (See *Hancock* v. *Williams* (1950) 99 Cal.App.2d 80, 82 [221 P.2d 129].)

## VII

■ Appellants contend that the jury's award of $105,000 compensatory damages plus prejudgment interest is excessive as a matter of law. They argue that Walters was entitled to recover his out-of-pocket losses, that is, the difference between the actual or market value of that with which he parted ($105,000), and the actual or market value of that which he received ($23,500 to $24,500), or $80,500 to $81,500.[10] On the other hand, Walters contends that he was entitled to recover damages, pursuant to Civil Code section 3333, in the amount which would compensate him for all detriment proximately caused by the fraud, whether anticipated or not. He urges that substantial evidence supports the jury's award of $105,000 in damages.

■ Under section 3343 of the Civil Code,[11] the measure of damages for the fraudulent purchase, sale or exchange of property is the out-of-pocket loss of the defrauded party. (*Garrett* v. *Perry* (1959) 53

---

[10]Appellants also suggest that Walters should be allowed to recover only his own payment and additional payments on the note and deed of trust, apparently on the theory that money borrowed from Wells Fargo and secured by a note and deed of trust is not out of Walters' pocket. This argument is unmeritorious, as Walters remains liable on the note and deed of trust. *Burkhouse* v. *Phillips* (1971) 18 Cal.App.3d 661, 665 [96 Cal.Rptr. 197], is distinguishable in that the lender had foreclosed on the property and sold it to a third person for $1 more than the demand.

[11]Civil Code section 3343 provides as follows:

"(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following:

. "(1) Amounts actually and reasonably expended in reliance upon the fraud.

"(2) An amount which would compensate the defrauded party for loss of use and enjoyment of the property to the extent that any such loss was proximately caused by the fraud.

"(3) Where the defrauded party has been induced by reason of the fraud to sell or otherwise part with the property in question, an amount which will compensate him for

Cal.2d 178, 183 [346 P.2d 758]; *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 159 [119 Cal.Rptr. 245].) The provision of section 3343 to the effect that a defrauded person may also recover "additional damage" arising from the transaction does not indicate that any other measure of damages may be applied; instead, it refers to such matters as expenses or other consequential injury stemming from the fraud. (*Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 762-763 [192 P.2d 935]; *O'Neil* v. *Spillane, supra,* 45 Cal.App.3d at p. 159.) As between a vendor and a vendee, the out-of-pocket rule of section 3343 is the exclusive measure of damages in an action for fraud and deceit. (*Pepper* v. *Underwood* (1975) 48 Cal.App.3d 698, 706-707 [122 Cal.Rptr. 343]; *Pepitone* v. *Russo* (1976) 64 Cal.App.3d 685, 688-689 [134 Cal.Rptr. 709].)

However, where a defrauding party stands in a fiduciary relationship to the victim of fraud, the damages must be measured pursuant to the broad provisions of sections 3333 and 1709[12] of the Civil Code, governing compensation for torts in general. (*Pepitone* v. *Russo, supra,* 64 Cal.App.3d at p. 689; *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 145, fn. 3 [85 Cal.Rptr. 693]; *Overgaard* v. *Johnson* (1977) 68 Cal.App.3d 821, 823 [137 Cal.Rptr. 412].) The cases are in

---

profits or other gains which might reasonably have been earned by use of the property had he retained it.

"(4) Where the defrauded party has been induced by reason of the fraud to purchase or otherwise acquire the property in question, an amount which will compensate him for any loss of profits or other gains which were reasonably anticipated and would have been earned by him from the use or sale of the property had it possessed the characteristics fraudulently attributed to it by the party committing the fraud, provided that lost profits from the use or sale of the property shall be recoverable only if and only to the extent that all of the following apply:

"(i) The defrauded party acquired the property for the purpose of using or reselling it for a profit.

"(ii) The defrauded party reasonably relied on the fraud in entering into the transaction and in anticipating profits from the subsequent use or sale of the property.

"(iii) Any loss of profits for which damages are sought under this paragraph have been proximately caused by the fraud and the defrauded party's reliance on it.

"(b) Nothing in this section shall do either of the following:

"(1) Permit the defrauded person to recover any amount measured by the difference between the value of property as represented and the actual value thereof.

"(2) Deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled." (Amended by Stats. 1971, ch. 943, § 1, p. 1850.)

[12]Section 1709 provides that: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for *any damage* which he thereby suffers." (Italics added.)

Section 3333, in turn, sets out that: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate *for all the detriment* proximately caused thereby, whether it could have been anticipated or not." (Italics added.)

conflict as to the measure of damages provided by the foregoing sections: one line of cases declares it is substantially the same as that for breach of contract prescribed by section 3300; i.e., it tends to give the party the benefit of his bargain (or the difference between the actual value of what he received and what he expected to receive), and insofar as possible to place him in the same position as he would have been had the promisor performed the contract. (E.g., *Pepitone* v. *Russo, supra,* 64 Cal.App.3d at p. 689.) In *Overgaard* v. *Johnson, supra,* 68 Cal.App.3d at pages 823-824, however, it was said, "Civil Code section 3333 does *not* set forth any benefit of the bargain rule. That section simply sets out the measure of damages long recognized in torts, namely, to compensate a plaintiff for a loss sustained rather than give him the benefit of any contract bargain (see Prosser, Law of Torts (4th ed. 1971) § 110)."

In the instant case, Leseman and Lampliter, as real estate agents for Walters, undeniably owed a fiduciary duty to Walters to disclose all material facts which might affect his decision with regard to the transaction. (*Pepitone* v. *Russo, supra,* 64 Cal.App.3d at p. 688; *Ford* v. *Cournale* (1973) 36 Cal.App.3d 172, 180 [111 Cal.Rptr. 334, 81 A.L.R.3d 704].) The measure of damages set forth in sections 3333 and 1709 is therefore applicable to them. However, the Marlers and their real estate agents, Fickle, Rector and Action, were not in a fiduciary relationship to Walters. Thus, as to them, the out-of-pocket rule of section 3343 governs.

■ Although the trial court failed to give the jury hybrid instructions[13] adequately defining the separate measures of damages applicable to those defendants who stood in a fiduciary relationship to Walters and those who did not, we conclude that under either measure of damages the award is excessive. Under the out-of-pocket measures set forth in section 3343, Walters is entitled to recover the difference between the actual value of that with which he parted ($105,000) and the market value of that which he received ($23,500 to $24,500), or $80,500 to $81,500. Subsequent expenditures by Walters for landscaping, property taxes, title insurance, property insurance, interest on the loan, and maintenance and repair of the property would not be recoverable. Since these expenditures would have been made even if the property had been as it was represented to be, they were not made in reliance upon the fraudulent misrepresentations. (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 491-492 [275 P.2d 15]; see 1 Miller & Starr, Cal. Real Estate (rev. ed. 1975) Remedies, pt. 2, § 5:5, pp. 100-101.) Similarly, under even the broadest interpreta-

[13]The jury was instructed, pursuant to BAJI No. 12.56, to award out-of-pocket losses to Walters.

tion of Civil Code section 3333, Walters would be entitled to recover only an amount sufficient to compensate him for his losses resulting from reliance upon the fraud, here the difference between the market value of what he received ($23,500 to $24,500) and what he expected to receive ($105,000) or $80,500 to $81,500. Again, the subsequent expenditures attested to by Walters were not in reliance upon the fraud, as they would have been made under any circumstances. (*Id.*)

In view of the uncontradicted evidence, appellants have overcome the presumption in favor of the validity of the verdict and judgment. The award of damages is excessive as a matter of law.

## VIII

The trial court awarded attorney's fees against all appellants in the amount of $43,150. Appellants contend that the award was improper in view of the fact that the jury based its award on a theory of negligent misrepresentation. For the reasons hereinafter discussed, we conclude that, as to appellants Transamerica, Rector, Fickle, Action, and the Marlers, this contention has merit. As to appellants Lampliter and Leseman, however, we disagree.

Walters was not entitled to attorney's fees under Civil Code section 1717. That section provides: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements. . . ."[14]

Walters contends that that section authorizes an award of attorney's fees in the present case. We do not agree. "The only reasonable interpretation of section 1717 is that it reciprocates the allowance of attorney's fees only when such fees are incurred to *enforce the provisions of the contract.*" (*McKenzie* v. *Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89-90 [127 Cal.Rptr. 275]; italics added.)

Section 1717 does not authorize the award herein involved. The action was not, as the statute requires, "on the contract," but in tort for fraud in

[14]The agreement to purchase and sell provided for reasonable attorney's fees to the prevailing party, should any party to the agreement institute legal action against any other party to the agreement.

derogation of the contract. (*Id.*, at p. 89; see also *Schlocker* v. *Schlocker* (1976) 62 Cal.App.3d 921 [133 Cal.Rptr. 485]; *Shannon* v. *Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686, 690 [76 Cal.Rptr. 7].) Walters' reliance upon *Leaf* v. *Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371 [120 Cal.Rptr. 749], is misplaced, as that case involved an action for breach of express warranty.

 Furthermore, Walters was not entitled to an award of attorney's fees against Transamerica based upon its obligation to defend and to clear title under the CLTA title insurance policy. Under the terms of the CLTA title insurance policy issued by Transamerica to Walters, Transamerica agreed to defend Walters in all actions commenced against him and to commence such action as may be appropriate to establish title of the estate as insured in Walters. However, when Walters requested Transamerica to honor these obligations, Transamerica refused to defend Walters on the cross-complaint, and to institute action to establish marketable title.[15]

 The rule is well established that an insurer's obligation to defend is broader than its duty to indemnify. (*Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London* (1965) 238 Cal.App.2d 532, 538 [47 Cal.Rptr. 843]; *Blackfield* v. *Underwriters at Lloyd's, London* (1966) 245 Cal.App.2d 271, 274 [53 Cal.Rptr. 838]; *Ritchie* v. *Anchor Casualty Co.* (1955) 135 Cal.App.2d 245, 250 [286 P.2d 1000].) The duty of an insurer to indemnify is determined, measured, and limited by the terms of the insurance contract (see *Cannizzo* v. *Guarantee Ins. Co.* (1966) 245 Cal.App.2d 70, 73 [53 Cal.Rptr. 657]), and depends upon an ultimate adjudication of coverage. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 271 [54 Cal.Rptr. 104, 419 P.2d 168].) In contrast, the duty of an insurer to defend depends upon the facts known to the insurer at the inception of the third party's suit against its insured. "An insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the *potential* of liability under the policy." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263 at pp. 276-277, italics added; see *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 526 [88 Cal.Rptr. 246].) The ultimate question is whether the *facts* alleged fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of the insurer to the insured under the terms of the policy. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 275-276, fn. 15.) Thus the insurer's obligation to defend is measured by the terms of the insurance policy, and the allegations of the

[15]Transamerica refused on grounds, inter alia, that the requests were not timely made.

complaint in the action against the insured. (*Lamb* v. *Belt Casualty Co.* (1935) 3 Cal.App.2d 624, 630 [40 P.2d 311].)

In the present case neither the complaint nor the Marlers' cross-complaint against Walters alleged facts which would support recovery upon risks covered by the Transamerica CLTA title insurance in favor of Walters. As previously noted, that policy specifically excluded, "Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records." Transamerica was therefore not required to defend or prosecute any action arising out of misunderstandings concerning the location of the house.

Walters is not entitled to attorney's fees under the "Tort of Another" exception to the general rule. In the absence of special agreement or statutory provisions, attorney's fees are to be paid by the party employing the attorney. (Code Civ. Proc., § 1021.) Nevertheless, a person who, through the tort of another, has been required to act in the protection of his interest by bringing or defending an action against a third person, is entitled to recover compensation for loss of time, *attorney's fees*, and other expenditures thereby suffered or incurred. (*Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620-621 [30 Cal.Rptr. 821, 381 P.2d 645]; *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 112 [128 Cal.Rptr. 901]; *Glass* v. *Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 437-438 [96 Cal.Rptr. 902].) This exception is narrowly defined. As the court noted in *Trails Trucking, Inc.* v. *Bendix-Westinghouse etc. Air Brake Co.* (1973) 32 Cal.App.3d 519 at page 524 [108 Cal.Rptr. 30]: "In *Prentice, supra,* and the cases upon which it is based and which have followed it, courts have allowed such fees and expenses when exceptional circumstances have been found to exist. Such exceptional circumstances have been the result of weighing by courts of policy considerations—when the factors in favor of allowance, rather than any hard fast rule, have dictated the justice of the allowance of such damages—on a case-by-case basis. Appellant has not convinced us those exceptional circumstances exist. Here there is no case of fraud, separate litigation necessarily brought about by the wrongdoing of the ultimate single tortfeasor, no chain of vexatious litigation, in short, nothing to justify this court to open a 'Pandora's Box' of prolonged litigation. To do so would deter and, perhaps, defeat, settlements causing a multiplicity of lawsuits by successful defendants." Similarly, in the present case, there is no "separate litigation brought about by the wrongdoing of the ultimate single tortfeasor." Instead we are presented with a case involving multiple

tortfeasors whose negligent misrepresentations combined to cause injury to plaintiff. Under these circumstances, the *Prentice* exception will not permit recovery of attorney's fees. (Compare *Lang* v. *Klinger* (1973) 34 Cal.App.3d 987, 993 [110 Cal.Rptr. 532]; *Glass* v. *Gulf Oil Corp., supra,* 12 Cal.App.3d at pp. 438-439.)

▮▮ Walters is entitled to recover attorney's fees from Leseman and Lampliter. As previously noted, where a defending party stands in a fiduciary relationship to the victim of a fraud, the damages must be measured pursuant to the broad provisions of Civil Code section 3333, governing torts in general. That section provides that the measure of damages for breach of an obligation not arising from contract "is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Clearly Walters would not have the incurred attorney's fees attributable to this case had the property been as it was represented to be. Walters is therefore entitled to compensation for reasonable attorney's fees from Leseman and Lampliter under Civil Code section 3333. (See *Overgaard* v. *Johnson, supra,* 68 Cal.App.3d 821, at p. 828.)

## IX

The Marlers contend that the trial court erred in denying their motion to vacate the judgment pending resolution of the Wells Fargo intervention action.[16] They argue that the judgment did not resolve all of the issues between the parties, and therefore did not comply with Code of Civil Procedure section 577. That section states: "A judgment is the final determination of the rights of the parties in an action or proceeding."

This contention is without merit. The judgment rendered determined that Walters was entitled to recover damages for negligent misrepresenta-

---

[16]The trial court construed it as a motion to set aside the judgment pursuant to Code of Civil Procedure section 663, and denied it on the ground, inter alia, that the judgment was not based upon findings of fact by the court, or special verdict of the jury. Code of Civil. Procedure section 663 provides:

"A judgment or decree, when based upon findings of fact made by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of such party and entitling him to a different judgment:

"1. Incorrect or erroneous conclusions of law not consistent with or not supported by the findings of fact; and in such case when the judgment is set aside, the conclusions of law shall be amended and corrected.

"2. A judgment or decree not consistent with or not supported by the special verdict."

tions made by the Marlers, among others. Nothing was left to be determined.

### Transamerica's Appeal From Judgment
### on Cross-complaint in Favor of Marlers

Transamerica contends that the Marlers failed to establish the elements of a cause of action for breach of contract as third party beneficiaries.[17] It therefore urges that the verdict in favor of the Marlers on the cross-complaint must be reversed.

On August 27, 1971, Transamerica issued a title insurance policy to Columbus Savings & Loan which included a foundation indorsement insuring that the improvements on said property were located on parcel 4. This indorsement contained the notation "inspected." The record is not clear whether an inspection was actually made. Assuming that the inspection was not made this error by Transamerica resulted in Columbus being advised by Transamerica that the improvements were located on parcel 4. In addition, Transamerica issued an ALTA extended coverage policy to Wells Fargo in connection with Wells Fargo's loan to Walters. This policy insured that there was a house located on parcel 4 and that it did not encroach onto adjoining lands. It was subsequently determined, however, that the house was located on parcels 1 and 4. On the basis of this evidence the jury concluded that Transamerica was in breach of the contracts of title insurance, and that the Marlers were entitled to recover damages as third party beneficiaries of those contracts.

Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

This section excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it. (*Martinez* v. *Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [113 Cal.Rptr. 585, 521 P.2d 841]; *Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 590 [15 Cal.Rptr. 821, 364 P.2d 685].) Although section 1559 does not set forth the various categories of beneficiaries, California has generally adopted the donee-creditor

---

[17]Transamerica also urges that the Marlers cannot assert this claim against them on a cross-complaint since it is in the nature of a claim for indemnification. However, in *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, the Supreme Court held that a claim for equitable indemnification may be asserted by cross-complaint. (*Id.,* at p. 584.)

classifications of the original Restatement of the Law of Contracts.[18] (*Walters* v. *Calderon* (1972) 25 Cal.App.3d 863, 870 [102 Cal.Rptr. 89].) ■■■ "The question of whether a third party is a donee, creditor or incidental beneficiary is a question of construction and the intent must be gathered from reading the contract as a whole under the light of the circumstances under which it was entered (*Ralph C. Sutro Co.* v. *Paramount Plastering, Inc.*, 216 Cal.App.2d 433 [31 Cal.Rptr. 174]). The test is whether an intent to benefit the third party appears from the terms of the contract (*Le Ballister* v. *Redwood Theatres, Inc.*, 1 Cal.App.2d 447, 449 [36 P.2d 827])." (*Walters* v. *Calderon, supra*, at p. 870.)

A person cannot be a creditor beneficiary unless the promisor's performance of the contract will discharge some form of legal duty owed to the beneficiary by the promisee. (*Martinez* v. *Socoma Companies, Inc., supra*, 11 Cal.3d 394, 400.) Clearly, Columbus and Wells Fargo (the promisees) at no time bore any legal duty toward the Marlers to provide the benefits set forth in the title insurance policies.

A person is a donee beneficiary only if the promisee's contractual intent is either to make a gift to him or to confer on him a right against

---

[18]Section 133 of the Restatement of the Law of Contracts provides in relevant part:

"(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

"(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary . . .

"(c) an incidental beneficiary if neither the facts stated in Clause (a) nor those stated in Clause (b) exist."

The proposed Restatement Second of Contracts, abandons the traditional donee-creditor-incidental beneficiary terminology. Instead, it employs the terms "intended" and "incidental" to differentiate between beneficiaries with enforceable rights and those who lack them. Notwithstanding the semantic shift, it is clear that the revised Restatement is grounded upon the same general framework. (See proposed Rest.2d Contracts (Tent. Drafts Nos. 1-7) pp. 284-285.) That is, the issue is still the parties' contractual intent as embodied in the language of the contract itself. (See Comment, *Martinez* v. *Socoma Companies: Problems In Determining Contract Beneficiaries' Rights* (1975-1976) 27 Hastings L.J., 137, 144.) Specifically, the proposed Restatement Second of Contracts (Tent. Drafts Nos. 1-7) provides as follows:

"Section 133. Intended and Incidental Beneficiaries.

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

"(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

"(b) the circumstances indicate that the promisee intends to give the promised performance.

"(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

the promisor. (*Martinez* v. *Socoma Companies, Inc., supra,* 11 Cal.3d at pp. 400-401.) ▉ However, not every contract for the benefit of a third person is enforceable by the beneficiary.

"The fact that he is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of *the parties* to secure to him personally the benefit of its provisions." (*Walters* v. *Calderon, supra,* 25 Cal.App.3d at p. 871.) The promisee must have intended to confer a benefit on the third party (*Walters* v. *Calderon, supra*), and such donative intent must have been understood by the promisor from the nature of the contract and the circumstances surrounding its execution. (*Martinez* v. *Socoma Companies, Inc., supra,* 11 Cal.3d at p. 411.)

▉ An insurance policy is a contract and must be construed the same way as other contracts. (*Everly* v. *Creech* (1956) 139 Cal.App.2d 651, 657 [294 P.2d 109].) For that reason, the basic principles of third party beneficiary law, as recited above, apply to policies of insurance. (See *Mutual Benefit Life Ins. Co.* v. *Clark* (1927) 81 Cal.App. 546, 554-555 [254 P. 306].) ▉ Title insurance policies are governed by the same general rules and principles of interpretation and construction as other insurance policies. (Augustine & Zarrow, Cal. Real Estate Law and Practice (1976) § 92.52; 9 Appleman, Insurance Law and Practice (1943) § 5201; *Lagomarsino* v. *San Jose etc. Title Ins. Co.* (1960) 178 Cal.App.2d 455, 464 [3 Cal.Rptr. 80].) Consequently, it follows that the basic principles of third party beneficiary law apply with equal force to title insurance policies. As a result, one who is only an incidental beneficiary of an insurance policy has no grounds for recovery. (*Fryer* v. *Kaiser Foundation Health Plan* (1963) 221 Cal.App.2d 674, 679 [34 Cal.Rptr. 688].)

▉ In the present situation, the Marlers are at most incidental beneficiaries to the ALTA policies issued to Columbus and Wells Fargo, as no intention to make a gift to the Marlers or to confer upon them a right against the promisor can be imputed to the insured lending institutions. The sole purpose of the contracts was to protect the lenders as mortgagees against any loss or impairment of their security.

The Marlers' reliance upon *Lucas* v. *Hamm, supra,* 56 Cal.2d 583, and *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], and their progeny, is misplaced. Those cases establish the principle that a professional may be liable for negligence to third persons not in privity

with the contracting parties, where under the circumstances the professional owed a duty of due care to the third person. The jury's verdict in favor of the Marlers and against Transamerica was founded upon a theory of breach of contract third party beneficiary, and not upon a theory of negligence. Having failed to establish the elements of a cause of action for breach of contract third party beneficiary, the judgment against Transamerica must be reversed. Similarly, the award of attorney's fees against Transamerica must be reversed, as the Marlers are not the prevailing party on a contract.

### Walters' Appeal From the Order
### of December 24, 1975

Walters contends that the trial court erred in granting judgment notwithstanding the verdict to defendant Kenneth Lee Proulx. As previously noted, the jury returned a verdict in favor of Walters on the theory of negligent misrepresentation against, inter alia, defendants Leseman, Lampliter and Proulx. Subsequently, the aforementioned defendants submitted a motion for judgment notwithstanding the verdicts, which motion was granted as to Proulx.

Walters first contends that the trial court's earlier denial of Proulx' motion for nonsuit indicated a belief on the part of the judge that there was some evidence to support a verdict against Proulx. Walters argues that the judge was bound by his previous finding of sufficiency and could not later reverse himself.

The trial court's power to grant a judgment notwithstanding the verdict is identical to his power to grant a motion for nonsuit or directed verdict. (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].)

A verdict may be directed despite a prior denial of a motion for nonsuit. (*Fuchs* v. *Southern Pac. Co.* (1935) 5 Cal.App.2d 409, 412 [42 P.2d 704]; see 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 352, p. 3152.) By the same token, a motion for judgment notwithstanding the verdict may be granted despite a prior denial of a motion for nonsuit. Here the judge was provided with additional authority relating to the duties and responsibilities of a qualifying broker. Under these circumstances, he might well conclude that the motion for nonsuit should have been granted and therefore grant judgment notwithstanding the verdict.

The evidence established that Proulx was the president of Lampliter and its "qualifying real estate broker." Leseman was a real estate broker and employed by Lampliter. Walters contends that as the qualifying broker for Lampliter, Proulx is individually liable to persons injured as a result of his negligence in the performance of his duty to supervise.

Under the statutory scheme regulating real estate brokers and salesmen (Bus. & Prof. Code, § 10000 et seq.), a corporation may be a real estate broker if licensed through officers of the corporation who qualify as brokers.

As qualifying officer for Lampliter, Proulx had a duty to exercise reasonable supervision over activities of salesmen employed by Lampliter (Bus. & Prof. Code, § 10177, subd. (h)), and all agreements executed by the salesman must have been reviewed and approved by him. (Cal. Admin. Code, tit. 10, § 2725.) It thus appears that, although Leseman was licensed as a broker, he was subject to supervision by Proulx.[19]

Leseman's testimony at trial would indicate that Proulx negligently performed his supervisory responsibilities. Leseman stated that Proulx did not assist, direct, or help in any way with the handling of the sale or escrow. Instead, he confined himself to reviewing and initialing the deposit slip *after* it was signed.

Despite this evidence of negligence on Proulx' part, Proulx may not be held individually liable to Walters for injuries sustained as a result of Leseman's misrepresentations. The noncontractual rights and liabilities of a real estate broker are governed and determined by the general laws of agency. (1 Miller & Starr, Cal. Real Estate (rev. ed. 1975) pt. 2, § 4:4, pp. 9-10.) In the instant case Leseman was undeniably an agent for both Walters and Lampliter; however, he was not an agent for Proulx. Any action by the qualifying broker, Proulx, must be regarded as an action by the corporation and not by the broker as an individual. Thus, as an agent of the corporation, Proulx owed a duty to Lampliter to supervise the work of Lampliter employees. Proulx may therefore be liable to Lampliter in an action for indemnification. However, Proulx owed no duty to Walters to supervise Leseman's work; he therefore may not be held personally liable to Walters for Leseman's negligent misrepresentations.

---

[19]Leseman himself stated that he was not performing as a broker in this case.

*Marlers' Cross-complaint Against
Leseman for Breach of Contract*

The Marlers contend that the trial court abused its discretion in awarding $15,307.50 in attorney's fees to Lampliter. The Marlers concede that an award of attorney's fees to Lampliter as the prevailing party in an action on a contract was proper. (Civ. Code, § 1717.) However, they argue that the trial court should have awarded only the proportionate share of attorney's fees attributable to defense of the cross-complaint.[20] We do not agree.

The determination of what constitutes reasonable attorney's fees is committed to the sound discretion of the trial court. An appellate court will interfere with that determination only where there has been a manifest abuse of discretion. (*Shannon* v. *Northern Counties Title Ins. Co., supra,* 270 Cal.App.2d 686 at p. 688.)

Robert Sturges, attorney for Lampliter, testified that Lampliter had incurred attorney's fees in the amount of $15,307.50. He conceded that not all of his time was spent on defense of the cross-complaint for breach of contract, but could not estimate the amount of time allocable to it. The trial court determined that the sum of $15,307.50 was a reasonable fee for defense of the cross-complaint.

In *Shannon* v. *Northern Counties Title Ins. Co., supra,* 270 Cal.App.2d 686 at pages 689-690, the appellate court upheld an award of attorney's fees which allocated those fees attributable to collection of a note, as distinguished from those attorney's fees attributable to defense of an action for fraud with which the case was consolidated.

While the *Shannon* case recognizes the trial court's discretion to allocate the proportionate share of attorney's fees attributable to one aspect of a case where appropriate, it does not require the trial court to make such an allocation. In the present case, the issues presented on the complaint, the Marlers' cross-complaint for breach of contract, and Lampliter's cross-complaint for indemnity were inextricably interrelated. Under these circumstances, it was not an abuse of discretion for the trial court to refuse to allocate attorney's fees attributable to one portion of a case.

---

[20]Lampliter also filed an action for indemnification against the Marlers, and defended the action brought by Walters.

*On the First Amended Complaint*

The judgment is reversed as to Transamerica Title Company. The judgment is reversed to the extent that it awards damages to Walters in the amount of $105,000. The judgment is affirmed to the extent that it awards Walters attorney's fees from Leseman and Lampliter, and reversed as to the award of attorney's fees against the other defendants. Transamerica Title Company to recover its costs. The remaining parties to bear their own costs.

*On the Marlers' Cross-complaint*

The judgment against Transamerica Title Company is reversed. The award of attorney's fees in favor of Leseman and Lampliter Realty Company is affirmed. Transamerica to recover its costs. Leseman and Lampliter Realty Company to recover their costs.

*On the Lampliter Realty Company and Leseman Cross-complaint,* the judgment is affirmed. The Marlers to recover their costs.

*On the Order of December 24, 1975*

The order granting the motion of Kenneth Proulx for judgment notwithstanding the verdict is affirmed. Kenneth Proulx to recover his costs.

The cause is remanded for further proceedings consistent with the views expressed herein.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied July 21, 1978, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied August 16, 1978.